UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: CV 22-3741 FLA (RAOx) Date: June 23, 2023
Title: Universal Dyeing and Printing, Inc. v. Zoetop Business Co., Ltd. et al.

---

Present: The Honorable **ROZELLA A. OLIVER, U.S. MAGISTRATE JUDGE**

| Donnamarie Luengo | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| N/A | N/A |

**Proceedings:** (In Chambers) **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL [49] AND GRANTING IN PART AND DENYING IN PART ZOETOP'S MOTION TO COMPEL [50]**

Pending before the Court are two discovery motions filed May 31, 2023. Dkt. Nos. 49, 50. Both motions were noticed for hearing on June 21, 2023. *See id.* The June 21, 2023 hearing was vacated and the motions were taken under submission. *See* Dkt. Nos. 51, 52.

This is a copyright infringement case regarding five two-dimensional artworks for textile printing (the "Subject Designs"). *See* First Am. Compl. ("FAC") ¶¶ 10, 12, Dkt. No. 19. Plaintiff alleges that various products and garments sold on Defendants' websites (the "Accused Products") infringe on the Subject Designs. *See id.* ¶ 14.

The first motion to compel is brought by Plaintiff Universal Dyeing & Printing, Inc. ("Plaintiff"). Dkt. No. 49 ("Pl. Mot."). Plaintiff requests an ordering compelling Defendants Zoetop Business Co., Ltd. ("Zoetop"), Shein Distribution Corporation ("SDC"), and Roadget Business Pte, Ltd. ("Roadget") (collectively, "Defendants") to provide full and complete initial disclosures and substantive responses to: Plaintiff's Request for Production ("RFP") Nos. 1, 4-11, 13, 15-18, 22-23, and 26-28; Interrogatory Nos. 5, 7, and 9-15; and Request for Admission ("RFA") Nos. 6-7, 12, 19, 32-36, and 38-41. *Id.* Plaintiff also requests monetary sanctions. *Id.* Plaintiff's Motion is accompanied by a Joint Stipulation, Dkt. No. 49-1 ("Pl. Mot. Joint Stip."), a declaration of Benjamin F. Tookey, Dkt. No. 49-2 ("Pl. Mot. Tookey Decl."), and a declaration of Thomas P. Burke Jr., Dkt. No. 49-3 ("Pl. Mot. Burke Decl."). The parties filed supplemental

memoranda on June 7, 2023. Dkt. No. 53 ("Pl. Mot. Pl. Suppl."); Dkt. No. 55 ("Pl. Mot. Def. Suppl.").

The second motion to compel is brought by Zoetop. Dkt. No. 50 ("Def. Mot."). Zoetop moves for an order compelling Plaintiff to provide full and complete substantive responses to: Interrogatory Nos. 1, 2, 4, 5, 16, 19, and 20; RFP Nos. 43-46; and RFA Nos. 7, 13, and 24-33. *Id.* Zoetop's Motion is accompanied by a Joint Stipulation, Dkt. No. 50-1 ("Def. Mot. Joint Stip."), a declaration of Thomas P. Burke Jr., Dkt. No. 50-2 ("Def. Mot. Burke Decl."), and a declaration of Benjamin F. Tookey, Dkt. No. 50-3 ("Def. Mot. Tookey Decl."). The parties filed supplemental memoranda on June 7, 2023. Dkt. No. 54 ("Def. Mot. Pl. Suppl."); Dkt. No. 56 ("Def. Mot. Def. Suppl.").

The Court finds the matters suitable for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons below, both motions are granted in part and denied in part.

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b) ("Rule 26(b)") provides that the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issue at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). On motion or on its own, the Court must limit the frequency or extent of discovery if it determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Louisiana Pac. Corp. v. Money Market 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining, and supporting its objections with competent evidence." *Id.* The Court will not compel a further response when "inadequate guidance exists to determine the proper scope of a discovery request." *Sanchez*

*Ritchie v. Energy*, Case No. 10cv1513-CAB(KSC), 2015 WL 12914435, at *2 (S.D. Cal. Mar. 30, 2015) (citing *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006)).

**A. Requests for Production**

Under Rule 34, a party may request from any other party production of documents or electronically stored information within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). A party may move to compel under Rule 37(a) if a responding party fails to produce documents or fails to respond that inspection will be permitted as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). An evasive or incomplete response is treated as a failure to respond. Fed. R. Civ. P. 37(a)(4).

**B. Interrogatories**

Under Rule 33, "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2).

A party may move to compel under Rule 37(a) if a responding party fails to answer an interrogatory. Fed. R. Civ. P. 37(a)(3)(B)(iii). An evasive or incomplete answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4).

"A party has an obligation to conduct a reasonable inquiry into the factual basis of its discovery responses." *Nat'l Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009). "When a dispute arises out of the completeness of a search undertaken, particularly where there is an absence of information that would have been expected to be included, the responding party must come forward with an explanation of the search conducted with sufficient specificity to allow the Court to determine whether a reasonable search was performed." *Shaw v. Davis*, No. 3:18-cv-0551-MMD-CLB, 2021 WL 3890094, at *4 (D. Nev. Aug. 31, 2021) (internal punctuation omitted).

### C. Requests for Admission

Under Rule 36, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either . . . ." Fed. R. Civ. P. 36(a)(1)(A). "The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issue for trial." *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981).

"If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). "Generally, qualification is permitted if the statement, although containing some truth, standing alone out of context of the whole truth conveys unwarranted and unfair inferences." *A.A. v. Cnty. of Riverside*, ED CV 14-2556-VAP (SPx), 2017 WL 5593023, at *6 (C.D. Cal. Apr. 6, 2017) (quoting *Diederich v. Dep't of Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990)). "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). "[A] party who is unable to agree with the exact wording of the request for admission should agree to an alternate wording or stipulation." *U.S. ex rel. Englund v. Los Angeles Cty.*, 235 F.R.D. 675, 685 (E.D. Cal. 2006). "[I]t is not ground for objection that the request is 'ambiguous' unless so ambiguous that the responding party cannot, in good faith, frame an intelligent reply." *Id.* at 685.

A party requesting an admission may move to determine the sufficiency of an answer where it believes the answering party has not, in fact, made a reasonable inquiry, or that there is information readily obtainable that would be sufficient to enable the answering party to admit or deny the matter. Fed. R. Civ. P. 36(a)(6); *Asea*, 669 F.2d at 1247; *see also id.* at 1246 ("[P]ermitting a party to avoid admitting or denying a proper request for admission simply by tracking the language of Rule 36(a) would encourage additional abuse of the discovery process."). "Unless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6).

## II. PLAINTIFF'S MOTION TO COMPEL

### A. Financial Discovery (RFPs and Interrogatories)

1. Discovery Requests and General Objection at Issue

**General Objection 18**: Responding Party objects to the Requests to the extent the Requests are overbroad as to time in that they seek information beyond the three-year statute of limitations applicable to Propounding Party's claims. 17 U.S.C.A. § 507(b).

**RFP No. 1**: DOCUMENTS sufficient to IDENTIFY any/all versions of each of the ACCUSED PRODUCTS that YOU created, designed, manufactured, sampled, purchased, sourced, obtained, distributed, offered for sale, and/or sold.

**RFP No. 4**: DOCUMENTS sufficient to constitute, show, and/or reflect YOUR purported ownership of the designs featured on the ACCUSED PRODUCTS.

**RFP No. 5**: All DOCUMENTS and COMMUNICATIONS which constitute, show, reflect, and/or relate to YOUR clearance of, and/or due diligence into, YOUR use of the designs featured on the ACCUSED PRODUCTS.

**RFP No. 6**: All DOCUMENTS which constitute, show, reflect, and/or relate to any/all representations or warranties made by or to YOU regarding ownership or creation of the SUBJECT DESIGNS or the designs featured on the ACCUSED PRODUCTS.

**RFP No. 7**: All DOCUMENTS and COMMUNICATIONS which constitute, show, reflect, and/or relate to YOUR solicitation and/or obtainment of any/all samples of the ACCUSED PRODUCTS and/or the designs featured thereon, and any feedback YOU provided regarding those samples.

**RFP No. 8**: All DOCUMENTS which constitute, show, and/or reflect the ACCUSED PRODUCTS displayed, promoted, and/or offered for sale on the Shein Websites (referring to shein.com and shopemeryrose.com and their related/affiliated subdomains, mobile websites, and applications) and in any/all catalogs, advertisements, price sheets, flyers, and/or brochures.

**RFP No. 9**: All DOCUMENTS and COMMUNICATIONS relating to the creation, development, and/or modification of the ACCUSED PRODUCTS, including DOCUMENTS which constitute, show, reflect, and/or relate to any/all directions, instructions, specifications, and/or feedback from YOU regarding the ACCUSED PRODUCTS, the designs thereon, and/or any/all samples thereof.

**RFP No. 10**: Any/all indemnification agreements for claims involving the ACCUSED PRODUCTS.

**RFP No. 13**: All DOCUMENTS relating to YOUR manufacture, obtainment, distribution, and/or sales of the ACCUSED PRODUCTS, including, e.g., purchase orders, invoices, sales receipts, and sales summaries.

**RFP No. 15**: DOCUMENTS sufficient to show the units sold for each ACCUSED PRODUCT and the prices at which those units were sold.

**RFP No. 16**: All DOCUMENTS which constitute, show, and/or reflect the revenues and profits YOU earned from sales of the ACCUSED PRODUCTS.

**RFP No. 17**: All DOCUMENTS which constitute, show, and/or reflect the costs and expenses YOU incurred in connection with YOUR exploitation of the ACCUSED PRODUCTS.

**RFP No. 18**: DOCUMENTS sufficient to show all SKUs under which the ACCUSED PRODUCTS were sold.

**RFP No. 22**: Any/all agreements for the purchase of the ACCUSED PRODUCTS and/or any/all textiles bearing the designs featured on the ACCUSED PRODUCTS.

**RFP No. 23**: DOCUMENTS sufficient to show all samples of the ACCUSED PRODUCTS.

**RFP No. 26**: DOCUMENTS sufficient to show the number of units of the ACCUSED PRODUCTS remaining in inventory, the status of those units, and where those units are located.

**RFP No. 27**: All DOCUMENTS YOU intend to rely on to support YOUR affirmative defenses.

**RFP No. 28**: Any/all license or sublicense agreement(s) YOU entered into regarding the designs featured on the ACCUSED PRODUCTS.

**Interrogatory No. 7**: Describe in detail YOUR sales of the ACCUSED PRODUCTS, including IDENTIFYING the dates on which YOU sold the ACCUSED PRODUCTS (i.e., the first and last dates on which the ACCUSED PRODUCTS were available for purchase), the amounts (i.e., units) of the ACCUSED PRODUCTS YOU sold, the prices at which the ACCUSED PRODUCTS were sold, and all SKUs under which YOU sold the ACCUSED PRODUCTS; and IDENTIFYING the DOCUMENTS that support YOUR responses.

**Interrogatory No. 9**: IDENTIFY the total revenues and profits YOU earned from YOUR exploitation of the ACCUSED PRODUCTS and describe in detail how and why those profits are attributable to factors other than the designs featured on the ACCUSED PRODUCTS, including by providing all bases for such apportionment(s) and indicating a numerical value for any/all factors other than the designs that YOU contend resulted in sales of the ACCUSED PRODUCTS; and IDENTIFYING the DOCUMENTS that support YOUR responses.

**Interrogatory No. 10**: IDENTIFY the total costs and expenses YOU incurred that are attributable to YOUR exploitation of the ACCUSED PRODUCTS, including IDENTIFYING, for each/every expense that YOU contend is deductible, (a) the nature of the expense, (b) the amount of the expense, (c) to whom the expense was paid, (d) how the expense relates to the sales of ACCUSED PRODUCTS, (e) when and how the expense was paid for, and (f) the DOCUMENTS that constitute, show, and/or reflect the foregoing.

2. <u>Analysis</u>

Plaintiff moves to compel production and responses to these requests from the sale of the first Accused Product to the present. Pl. Mot. Joint Stip. at 28.

As to sales information after June 1, 2022, Defendants explain that Plaintiff never specifically asked for such information and Defendants are willing to provide this information. Pl. Mot. Burke Decl. ¶ 11. Thus, this portion of this dispute is now moot.

The parties dispute whether Defendants may limit their responses and production to the time period of three years before the filing of the initial complaint through the present. *See* Pl. Mot. Joint Stip. at 28. Plaintiff argues that a full and complete accounting of sales, revenues, profits, costs, and expenses of the Accused Products is relevant to damages and that there is no requirement to plead delayed discovery to seek information pre-dating the purported statute of limitations period.[1] *Id.* at 28, 32-22. Defendants argue that information about sales going beyond three years prior to filing of the original complaint is not relevant because the operative complaint does not show that the discovery rule applies. *Id.* at 37.

The Court GRANTS Plaintiff's request to compel further production and responses to these RFPs and interrogatories.

The parties do not dispute that the requested financial information is relevant to damages, even though they dispute the proper time frame. "[T]he discovery rule for accrual allows copyright holders to recover damages for all infringing acts that occurred before they knew or reasonably should have known of the infringing incidents and that the three-year limitations period runs from the date the claim accrued, *i.e.*, from the date when the copyright holder knew or should have known of the infringement." *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1244 (9th Cir. 2022). "The inquiry raises a question of fact but may be considered on a motion to dismiss if no reasonable finder of fact could conclude that the claimant's lack of knowledge was reasonable under the circumstances." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1169 (N.D. Cal. 2019). Here, there is no dispute that Plaintiff will have the burden to prove the applicability of the discovery rule exception. The Court is not persuaded, however, that Plaintiff has to plead facts in its operative pleading to support application of the discovery rule as a predicate to seeking financial information beyond the three-year period in discovery.

As noted by the court in *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 510 F. Supp. 3d 878, 890 n.9 (C.D. Cal. 2021), the statute of limitations is an affirmative defense and a plaintiff is not required to specifically plead that the date of the alleged infringements occurred within the statute of limitations. Here, Plaintiff seeks damages for "all Defendants' profits," *see* FAC at 11, and there are no allegations in the pleading that would necessarily defeat application

[1] The Court will not consider Plaintiff's arguments based on documents provided during mediation as they do not affect the Court's ruling.

of the discovery rule. Plaintiff cites to *Gottesman v. Santana*, No.: 16-cv-2902 JLS (JLB), 2017 WL 5889765 (S.D. Cal. Nov. 29, 2017), where the court permitted discovery for financial information for a time period that extended back to the date the plaintiff created the artwork at issue. The court found that "[t]he statute of limitations is not a rigid barrier separating discoverable information from information outside the scope of discovery," and declined to make any ruling "on the merits of the statute of limitations issue as a predicate to ruling on this discovery matter." *Id.* at *5-6. The Court agrees that limiting Plaintiff's ability to seek financial discovery to three years prior to the date of filing would essentially preclude Plaintiff from the benefits of any successful argument regarding the application of the discovery rule because Plaintiff would not be able to seek damages for any infringement that took place prior to three years before filing. It would be improper for the undersigned to effectively rule on the applicability of the discovery rule as a predicate to determining whether Plaintiff is entitled to the financial discovery at issue.

The Court is not persuaded by Defendants' cited authority.[2] Defendants cite to a magistrate judge order from *Star Fabrics, Inc. v. Zulily, LLC*, CV 18-3071-DMG (PJWx). *See* Pl. Mot. Burke Decl., Ex. 1. This is an order following a telephonic discovery conference. The order states that the plaintiff will file an amended complaint alleging delayed discovery and the defendant will then produce documents relating to the period prior to the three years from the date of the suit. There is no legal analysis on this issue within the order and the order does not state that the documents at issue are financial discovery. It is also not clear if this is a compromise the parties came to during the telephonic hearing or something the court suggested and ordered. The order therefore does not carry the weight that Defendants suggest. *See* Pl. Mot. Joint Stip. at 39 (explaining that the magistrate judge in *Star Fabrics* "order[ed] plaintiff to file amended complaint alleging delayed discovery where defendant had refused to produce financials beyond three years on the grounds that delayed discovery was not pleaded").

As to *Yue v. MSC Software Corp.*, No. 15-CV-05526-PJH, 2016 WL 3913011, at *1-2 (N.D. Cal. July 20, 2016), the court noted that it had previously imposed a five-year limit on the discovery period. The order that imposed that five-year limit simply stated that "[d]iscovery is limited to the past 5 years. If either side wants to take discovery beyond the 5 years, a showing

[2] The Court has addressed cases cited by the parties that discussed discovery disputes in copyright cases. The Court has not addressed all of the cases cited by parties in the interests of efficiency and finds that many are distinguishable because they did not involve discovery disputes or were not copyright cases.

will need to be made to the Court." Civil Minutes, *Yue v. MSC Software Corp.*, No. 15-CV-05526-PJH (N.D. Cal. Mar. 3, 2016), ECF No. 30. In accordance with the March 3, 2016 order, the court later stated that the plaintiff would have to make a showing regarding the discovery rule to expand the discovery period. 2016 WL 3913011, at *2. While there is no explanation within either order as to why the five-year limit was initially imposed, the Court notes that the defendant took the position prior to the March 3, 2016 order that documents relating to potential damages before December 3, 2012, three years prior to filing, should be presumed not to be responsive. Joint Case Management Statement and Rule 26(f) Report, No. 15-CV-05526-PJH (N.D. Cal. Feb. 25, 2016), ECF No. 26. However, the five-year discovery period set by the court extended to March 2011. Thus, even in *Yue*, the court's discovery period permitted at least some discovery regarding damages that pre-dated the three years preceding filing. And while the court stated that the plaintiff would have to make a showing regarding delayed discovery to expand the discovery period, it did not state that it would require the plaintiff to amend his pleading to include those facts. 2016 WL 3913011, at *2.

And, as recognized by Defendants, the court in *Salinas v. Procter and Gamble Co.*, No. 2:19-cv-06794-RGK-AS, 2020 WL 8455137, at *3 (C.D. Cal. Oct. 9, 2020), expressly did not reach the issue of whether the statute of limitations limits discovery of financial information to the three-year period preceding filing. There, the magistrate judge considered the plaintiff's request as seeking "discovery of indirect profits, that is, profits not generated by selling an infringing product." *Id.* at *3. The magistrate judge found that the plaintiff had not shown that its request for indirect profits was relevant or proportional to the needs of the case. *Id.* In affirming the magistrate judge's order, the district judge also did not refer to the statute of limitations. *Salinas v. Procter and Gamble Co.*, No. 2:19-cv-06794-RGK-AS, 2020 WL 8455187, at *2 (C.D. Cal. Dec. 4, 2020). *Salinas* is not applicable here because the *Salinas* court did not rule on the propriety of limiting financial information on damages based on the statute of limitations and Plaintiff does not appear to be seeking information about indirect profits; all of the requests are tied to financial information regarding the Accused Products.

In sum, the Court finds that Plaintiff is not precluded from seeking financial discovery beyond three years preceding the filing of the complaint due to a purported failure to allege facts to support application of the delayed discovery rule. The requested information would be relevant to Plaintiff's claim for damages if Plaintiff meets its burden to show applicability of the delayed discovery rule at the appropriate time. While the Court generally would be wary about permitting

extensive financial discovery without some time limitation, Defendants do not object to these requests on any ground other than relevance in the Joint Stipulation. In the absence of any information from Defendants about how far back in time the requested information reaches and the burden associated with producing such information, the Court declines to impose a time limitation. Additionally, as noted below, Plaintiff contends that the Subject Designs were first published in 2008 through 2013. Thus, these requests would likely cover, at most, 10-15 years of financial information, depending on the Subject Design and when the Accused Products were first sold. This is similar to the time period seen in *Gottesman*, which permitted financial discovery for a period of 12 years, except as to a defendant that had sufficiently established that it would be unduly burdensome to respond. The Court GRANTS Plaintiff's request to compel further responses and production to these RFPs and interrogatories.

**B. Miscellaneous Interrogatories**

1. Objection to Interrogatories as Compound

It appears that the interrogatories in this section were grouped together based on Plaintiff's understanding that Defendants were objecting to these interrogatories as compound to the extent they asked about over 50 different Accused Products. Defendants have clarified that they are no longer standing on that specific objection. Pl. Mot. Joint Stip. at 56-57. Therefore, the motion is moot as to the request to overrule this objection. Because there is no longer a common dispute for these requests, the Court has further categorized them by subject matter.

2. Interrogatory Nos. 11 and 13 to Zoetop

**Interrogatory No. 11 to Zoetop**: IDENTIFY all PERSONS involved in the creation, manufacture, obtainment, distribution, and sale of the ACCUSED PRODUCTS—e.g., any/all printing mills, textile factories, and sewing houses involved in manufacturing the ACCUSED PRODUCTS into finished products (e.g., garments); any/all piece good vendors, fabric suppliers, manufacturers, mills, design houses, and/or converters that provided sample production fabric or sample garments to YOU, including any/all samples of the ACCUSED PRODUCTS—and describe in detail the involvement of each such PERSON.

**Interrogatory No. 13 to Zoetop**: IDENTIFY the number of units and yards of ACCUSED PRODUCTS remaining in inventory and/or YOUR possession, custody, or control, as well as where those units are located.

Zoetop asserted a series of objections to these two interrogatories and did not provide substantive responses. However, Defendants do not set forth any argument in the joint stipulation specific to these two interrogatories. According to Defendants, the main areas of dispute in this section are contention interrogatories about Defendants' affirmative defenses, interrogatories asking how Defendants responded to cease-and-desist letters, and a contention interrogatory about substantial similarity. *See* Pl. Mot. Joint Stip. at 57. Interrogatory Nos. 11 and 13 do not fall under any of these categories. Defendants also have not addressed these two interrogatories in its supplemental memorandum. Because Defendants have not set forth any arguments in opposition, Plaintiff's motion to compel responses to these two interrogatories is GRANTED.

3. Factual Bases for Affirmative Defenses

**Interrogatory No. 12 to Zoetop**: Describe in detail the complete factual bases for YOUR third affirmative defense (i.e., "Lack of Requisite Originality and/or Creativity") and tenth affirmative defense (i.e., "Scènes à Faire and Merger") asserted in YOUR Answer, as well as describing in detail and IDENTIFYING any/all textile designs that YOU contend are substantially similar to and predate the SUBJECT DESIGNS, the sources for those designs, the alleged date each design was created, and whether YOU registered those designs with the U.S. Copyright Office or any copyright office.

**Interrogatory No. 12 to SDC**: Describe in detail the complete factual bases for YOUR sixth and seventh affirmative defenses (i.e., "Incorrect Information Included in Copyright Registration Application" and "Fraud on the Copyright Office") asserted in YOUR Answer, and IDENTIFY any/all DOCUMENTS supporting YOUR response.

Zoetop and SDC asserted a series of objections to these interrogatories and did not provide substantive responses. It appears that the only objection they now stand on is that the interrogatories are premature.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No.: | CV 22-3741 FLA (RAOx) | Date: | June 23, 2023 |
| Title: | Universal Dyeing and Printing, Inc. v. Zoetop Business Co., Ltd. et al. | | |

The Court GRANTS Plaintiff's motion as to these interrogatories. First, it does not appear that Zoetop and SDC have timely asserted their objection that these interrogatories are premature contention interrogatories. In their initial responses, Zoetop and SDC objected to the interrogatories as prematurely seeking the disclosure of expert testimony or opinion. *See* Pl. Mot. Joint Stip. at 43-44. They did not object on the basis that they were premature contention interrogatories. Thus, the Court considers this objection waived.

Second, a scheduling order was issued in September 2022. Dkt. No. 28. In other words, over nine months have passed in discovery. The current fact discovery cut-off is August 4, 2023, less than two months away. Dkt. No. 48. Even if the pending joint stipulation to continue dates is granted, the proposed discovery cut-off is approximately three months away. At this late stage of the proceedings, Defendants should be able to provide a response to a contention interrogatory with supporting facts and documents. The requests are not improper to the extent they are only seeking facts and documents that are not part of expert disclosures. *See MCC Controls v. Hal Hays Constr.*, No. EDCV 19-1655-AB (KKx), 2020 WL 6034321, at *4 (C.D. Cal. July 23, 2020) (overruling objection that interrogatories call for expert testimony where it was not apparent from the face of the interrogatories that the information sought could only be addressed by an expert); *see also Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No. CV 18-10513-PSG (KSx), 2020 WL 10052403, at *10 (C.D. Cal. July 8, 2020) (finding that to the extent interrogatories sought factual information, even though an expert might later rely on those facts to formulate an expert opinion, the discovery was not premature expert discovery). Defendants have not argued that these interrogatories are seeking expert opinion and it is not apparent from the face of the interrogatories that they would require expert testimony. Moreover, Defendants claim that Plaintiff has now produced documents and provided interrogatory responses about the subjects of these defenses. *See* Pl. Mot. Joint Stip. at 58.

Zoetop and SDC must provide complete responses based on a reasonable inquiry. To the extent they receive further discovery that would affect their responses, Zoetop and SDC should correct or supplement their responses as needed. *See Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003-04 (N.D. Cal. 2019) ("Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes." (citation omitted)).

4. Responses to Cease-and-Desist Letters

**Interrogatory No. 14 to Zoetop and SDC**: Describe in detail all steps YOU took, after YOU received each cease-and-desist letter from UDP regarding the SUBJECT DESIGNS and ACCUSED PRODUCTS, to investigate or remedy the alleged infringement, including IDENTIFYING any/all PERSONS YOU contacted as part of YOUR investigation.

Zoetop and SDC asserted a series of objections to these interrogatories and did not provide substantive responses. It appears that the only objections they now stand on are that the interrogatories seek information protected by the attorney-client privilege or the attorney work product doctrine and that the interrogatories impose an undue burden because they are impermissibly compound. Pl. Mot. Joint Stip. at 59.

The Court is not entirely clear whether Defendants' argument about the interrogatory having 14 discrete subparts (for each cease-and-desist letter) is an objection to the interrogatory as being compound or unduly burdensome. To the extent Defendants are asserting that the interrogatory is unduly burdensome, Defendants have not set forth the burden associated with fully responding to the interrogatory. "The party 'claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'" *Hall v. Marriot Int'l, Inc.*, No.: 3:19-cv-01715-JLS-AHG, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021). While Defendants contend that the letters were sent on different dates, pertained to different designs, and alleged infringement by different products, Defendants do not set forth how conducting a reasonable inquiry to prepare a response to this interrogatory would be unduly burdensome. Responding about 14 letters does not facially appear to be unduly burdensome.

As to the objection that the interrogatory is actually multiple interrogatories, one for each cease-and-desist letter, the Court overrules the objection, or, in the alternative, permits Plaintiff to exceed the limit on interrogatories so that it can receive a complete answer. "[C]ourts generally agree that interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (citing *Safeco of America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)); *see also In re Questcor Pharms., Inc. Sec. Litig.*, Case No. SACV 12-1623-DMG (JPRx), 2015 WL 12672130, at *1 (C.D. Cal. Jan. 21, 2015) (finding that

interrogatories that ask about a single common theme are not compound). Here, the Court finds that this interrogatory requests information about the primary question or common theme of Defendants' response to cease-and-desist letters sent by Plaintiff with respect to the Subject Designs at issue in this case. Thus, the interrogatory is not impermissibly compound.

Moreover, Defendants do not dispute relevance and Defendants' conduct in response to a cease-and-desist letter is relevant to willfulness. *See Globe Ent. and Media, Corp. v. Glob. Images USA*, No. 2:20-CV-11630-CAS (KSx), 2022 WL 2703845, at *6 (C.D. Cal. July 11, 2022) ("A finding of willfulness is supported where the defendant has continued to infringe after being informed it was infringing, such as by a cease-and-desist letter."). While the Court finds that the interrogatory is not impermissibly compound, to the extent it is, the Court permits Plaintiff to exceed the limit on interrogatories such that Zoetop and SDC must provide a full response to this interrogatory. Zoetop and SDC do not have to disclose privileged information. However, Zoetop and SDC must clearly state in their response if they have withheld information based on a privilege.

In sum, Plaintiff's motion is GRANTED as to this interrogatory.

5. <u>Contention Interrogatory about Substantial Similarity</u>

**Interrogatory No. 15 to Zoetop and SDC**: If YOU so contend, describe in detail the factual bases for YOUR contention that the designs featured on the ACCUSED PRODUCTS are not substantially similar to the SUBJECT DESIGNS, and IDENTIFY any/all DOCUMENTS supporting YOUR contention.

Zoetop and SDC initially asserted a series of objections to these interrogatories and did not provide substantive responses. SDC subsequently provided a supplemental response that stated that it could not fully address the issue before Plaintiff identified original elements of its works and that the forthcoming motion for summary judgment will more fully identify all documents on which its contention is based. Pl. Mot. Joint Stip. at 46-47.

The Court DENIES Plaintiff's motion to compel a further response to this interrogatory. Defendants argue that the information sought by this interrogatory is typically the subject of expert analysis, and that Defendants "intend to provide the information sought through Universal's Interrogatory No. 15 in their expert disclosures." Pl. Mot. Joint Stip. at 61. Because Zoetop and

SDC asserted an objection in response to this interrogatory that it was prematurely seeking expert opinion, the Court finds that Defendants have timely asserted this objection. This interrogatory essentially seeks an opinion as to how the Accused Products are not substantially similar to the Subject Designs. The extrinsic test for substantial similarity "often requires analytical dissection of a work and expert analysis." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Although Plaintiff argues that Defendants' argument is groundless, the cases cited by Plaintiff do not address interrogatories seeking a contention regarding substantial similarity. *See* Pl. Mot. Joint Stip. at 54-55. Contention interrogatories prematurely calling for expert opinions are generally improper. *See Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS (JDEx), 2020 WL 12584277, at *5 (C.D. Cal. July 20, 2020). Thus, the Court will not compel Defendants to provide a complete response prior to the deadline for expert disclosures.

**C. Initial Disclosures and Communications about Accused Products**

1. Discovery Requests and Objection(s) at Issue

**RFP No. 11**: All internal (e.g., between YOUR employees) and external (e.g., between YOU and a vendor of the ACCUSED PRODUCTS) COMMUNICATIONS relating to the ACCUSED PRODUCTS and/or the designs featured thereon.

**Response to RFP No. 11**: Responding Party incorporates by reference its General Objections as though fully set forth here. Responding Party objects to the term "ACCUSED PRODUCTS" as set forth in the General Objections. Responding Party objects to this Request on the grounds that the term "relating to" is vague and ambiguous. Responding Party objects on the ground that this request seeks information disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. Responding Party objects to this request on the ground that this request is vague, overbroad, and unduly burdensome.

Plaintiff argues that Defendants have not substantiated their contention of undue burden and Defendants' request for search terms and custodians is disingenuous because each Accused Product has a unique SKU. Pl. Mot. Joint Stip. at 63. Plaintiff further asserts that Defendants'

initial disclosures do not comply with Rule 26 because Defendants have not identified their vendors, in-house buyers, or in-house designers.[3] *Id.* at 65. Plaintiff requests that the Court order Defendants to remedy the deficiencies in their initial disclosures or to preclude Defendants from offering testimony or evidence from witnesses that they have failed to disclose. *Id.* at 66-67.

Defendants respond that RFP No. 11 is overbroad because it asks for "all communications" that are "related to" the Accused Products or their designs. *Id.* at 67-68. Defendants contend that if Plaintiff had provided a list of SKUs for Defendants to search for, Defendants could have conducted that search and produced a first wave. *Id.* at 68. As to Plaintiff's dissatisfaction with the initial disclosures, Defendants contend they have complied with Rule 26's mandate to disclose the identities of witnesses that they may use to support their claims or defenses. *Id.*

As to the RFP, the Court has reviewed the parties' arguments and finds a reasonable compromise that the parties should have been able to reach without Court intervention. It appears that the Accused Products are defined by SKU number and Defendants do not object to conducting a search of SKU numbers. In light of the potentially overbroad and burdensome nature of a search and production in response to a request for all communications about the Accused Products and its designs, the Court exercises its discretion under Rule 26(b) and orders the parties to proceed as follows. Plaintiff shall provide Defendants with a list of all SKU numbers Plaintiff is aware of corresponding to the Accused Products.[4] To the extent Plaintiff does not have the SKU number for an Accused Product, Plaintiff shall identify the Accused Product in some other manner. Upon receipt of the list, Defendants shall identify the SKU numbers for any products missing an SKU number and include any other SKU numbers Defendants are aware of that correspond to an Accused Product. If Defendants cannot find an SKU number for an Accused Product, Defendants shall choose an alternate number or keyword to capture that product in their search. Defendants shall provide the updated list to Plaintiff. Defendants shall conduct a search of communications containing the SKU numbers and any alternate numbers/keywords on the list, and produce non-privileged documents that result from the search. If, after conducting the search, Defendants

[3] Plaintiff also contends that Roadget has not yet served its initial disclosures, Pl. Mot. Joint Stip. at 65, but Defendants have now confirmed that all Defendants have served initial disclosures, *id.* at 68. This portion of the dispute is now moot.

[4] If the list of SKU numbers on pages 11 and 12 of the joint stipulation is the complete list that Plaintiff would like Defendants to use in their search, Plaintiff may indicate so to Defendants.

suspect that the list is hitting on a large number of irrelevant documents, the parties shall meet and confer.

Plaintiff's complaint regarding Defendants' failure to disclose information or witnesses that Plaintiff believes Defendants will rely upon is better addressed on a motion or limine or other appropriate request pursuant to Rule 37(c)(1).

In sum, Plaintiff's motion is granted in part as to this request, and the parties are ordered to follow the procedure set forth above.

**D. Requests for Admission**

1. RFAs at Issue

**RFA No. 6**: Admit that YOU [excluding "vendors"] did not create the designs featured on the ACCUSED PRODUCTS.

**RFA No. 7**: Admit that none of YOUR vendors created the designs featured on the ACCUSED PRODUCTS.

**RFA No. 12**: Admit that YOU [excluding "vendors"] did not seek or obtain a license, authorization, or consent from UDP to use the designs featured on the ACCUSED PRODUCTS.

**RFA No. 19**: Admit that prior to August 25, 2022, YOU owned, operated, or controlled the websites us.shein.com and shopemeryrose.com.

**RFA No. 32**: Admit that YOU [excluding "vendors"] received cease-and-desist correspondence from UDP regarding certain of the ACCUSED PRODUCTS in July 2022 (UDP000483–85).

**RFA No. 33**: Admit that YOU [excluding "vendors"] received cease-and-desist correspondence from UDP regarding certain of the ACCUSED PRODUCTS in August 2022 (UDP000502–05).

**RFA No. 34**: Admit that YOU [excluding "vendors"] sold one or more ACCUSED PRODUCTS after receiving cease-and-desist correspondence from UDP in November 2021 (UDP000123-32).

**RFA No. 35**: Admit that YOU [excluding "vendors"] sold one or more ACCUSED PRODUCTS after receiving cease-and-desist correspondence from UDP in January 2022 (UDP000163-78, UDP000250-59, UDP000260-65, UDP000266-69, UDP000270-74).

**RFA No. 36**: Admit that YOU [excluding "vendors"] sold one or more ACCUSED PRODUCTS after receiving cease-and-desist correspondence from UDP in February 2022 (UDP000348-58).

**RFA No. 38**: Admit that YOU [excluding "vendors"] sold one or more ACCUSED PRODUCTS after receiving cease-and-desist correspondence from UDP in May 2022 (UDP000402-06, UDP000407-10).

**RFA No. 39**: Admit that YOU [excluding "vendors"] sold one or more ACCUSED PRODUCTS after receiving cease-and-desist correspondence from UDP in July 2022 (UDP000483-85).

**RFA No. 40**: Admit that YOU [excluding "vendors"] sold one or more ACCUSED PRODUCTS after receiving cease-and-desist correspondence from UDP in August 2022 (UDP000502-05).

**RFA No. 41**: Admit that YOU [excluding "vendors"] sold one or more ACCUSED PRODUCTS after the filing of this case (June 1, 2022).

2. Zoetop's Response to RFA No. 19 and SDC's Response to RFA No. 41

Zoetop denied RFA No. 19. Pl. Mot. Joint Stip. at 72. In a supplemental response, SDC denied RFA No. 41. *Id.* at 82. Plaintiff contends that these denials are untrue and thus in bad faith. Pl. Mot. Joint Stip. at 84-85, 87. However, this is not a basis to compel an amended response or to deem a matter admitted. As Defendants point out, Plaintiff may seek remedies under Rule 37(c)(2) if it later proves the matters in these RFAs to be true. Plaintiff's motion is DENIED as to these two responses to RFAs.

3. Lack of Knowledge or Information

In response to RFA Nos. 6, 7, 12, 32-36, and 39-41, Zoetop responded that, "Responding Party has made a reasonable inquiry into the subject matter of this Request and the information

that it knows or can readily obtain is insufficient to allow it to admit or deny." Pl. Mot. Joint Stip. at 69-82. In response to RFA Nos. 7, 32, and 33, SDC also responded that, "Responding Party has made a reasonable inquiry into the subject matter of this Request and the information that it knows or can readily obtain is insufficient to allow it to admit or deny." *Id.* at 70, 72, 73.

Although Rule 36(a)(4) permits a party to assert a lack of knowledge or information "if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny," the Ninth Circuit has held that such a response does not comply with Rule 36(a) "if the answering party has not, in fact, made 'reasonable inquiry,' or if information 'readily obtainable' is sufficient to enable [the party] to admit or deny the matter." *Asea*, 669 F.2d at 1247. Courts may require a responding party asserting a lack of knowledge or information to explain what reasonable inquiry was taken by that party. *See, e.g.*, *Drs. Med. Ctr. of Modesto, Inc. v. Principal Life Ins. Co.*, No. 1:10-cv-00452-LJO-SKO, 2011 WL 831421, at *7 (E.D. Cal. Mar. 3, 2011) (requiring responding party to "diligently set forth what reasonable inquiry has been taken to uncover such information"); *U.S. ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 685 (E.D. Cal. 2006) ("The responding party's simple statement that he or she has made a 'reasonable' inquiry and is unable to admit or deny the request because insufficient information is available may not suffice as an answer to the request for admission.").

As to RFA No. 7, which asks for an admission that none of Zoetop and SDC's vendors created the designs featured on the Accused Products, it may be that this information is not within Zoetop and SDC's knowledge or information after a reasonable inquiry. However, as to the remaining RFAs, it appears that Zoetop and/or SDC would have information available to admit or deny the matters. As to some of the RFAs, it appears that Plaintiff has pointed to emails that would likely render available the information required for Zoetop and/or SDC to admit or deny. *See* Pl. Mot. Joint Stip. at 85-86. The Court will provide Zoetop and SDC an opportunity to amend their responses to admit or deny these RFAs. If Zoetop and/or SDC choose to stand on their response that they lack knowledge or information to admit or deny, they must provide an explanation as to the reasonable inquiry that took place, specific to each RFA.

4. Sales of Accused Products after Receipt of Cease-and-Desist Letters

In supplemental responses to RFA Nos. 34-36 and 38-40, SDC objected that the requests were impermissibly compound because the specific cease-and-desist correspondence identified by

Plaintiff alleges infringement by a certain number of "Offending Products," while the definition of "Accused Products" incorporates over 50 allegedly infringing products. *See* Pl. Mot. Joint. Stip. at 74-81. SDC further responded that because the RFAs are not limited to the specific "Offending Products" identified in the cease-and-desist correspondences, the RFAs seek irrelevant information, are vague and ambiguous, and are impermissibly compound. *Id.*

The Court overrules SDC's objections to these RFAs. The RFAs are not compound as they ask one question: whether one or more of any of the Accused Products was sold after a certain event.[5] As to Defendants' argument that "some of the requests lump together multiple letters from the same calendar month," Pl. Mot. Joint Stip. at 89, Defendants do not identify the purportedly offending requests. To the extent more than one cease-and-desist letter was received in a specified month, the Court believes a fair construction of the RFAs is that they ask about sales of Accused Products after the responding party received the first cease-and-desist correspondence in the specified month. Finally, the RFAs do not seek irrelevant information. While SDC may argue that the sale of a product that had not been previously identified by a cease-and-desist letter was not willful, Plaintiff may argue that the sale of a product with a design that is the same or similar to that identified in a prior cease-and-desist letter was willful, even if the specific product was not included in the letter. SDC is ordered to serve amended responses that either admit or deny these RFAs.

5. SDC'S Supplemental Responses to RFA Nos. 6 and 12

In a supplemental response to RFA No. 6, SDC stated, "Admit that Responding Party did not create Plaintiff's alleged designs UA13589, UA16033, UA17504, UA17749, and UA16802." Pl. Mot. Joint Stip. at 70. In a supplemental response to RFA No. 12, SDC stated, "Admit that Responding Party did not seek or obtain a license from Plaintiff to use Plaintiff's alleged designs UA13589, UA16033, UA17504, UA17749, and UA16802." Pl. Mot. Joint Stip. at 70-71.

[5] The phrase "one or more" could potentially be ambiguous and render the RFA compound if it is asking two questions: whether one Accused Product was sold and whether more than one Accused Product was sold. But SDC did not note this particular phrase in its objections. A logical alternate wording would be "at least one." To the extent there is any ambiguity, the Court construes these RFAs as asking the responding party to admit whether at least one Accused Product was sold after the specified event.

The Court agrees with Plaintiff that these responses do not fairly respond to the RFAs. RFA No. 6 asks whether the responding party created the designs featured on the Accused Products, not whether the responding party created any of the Subject Designs. RFA No. 12 asks whether the responding party did not seek or obtain a license, authorization, or consent from UDP to use the designs featured on the Accused Products, not whether a license was obtained to use the Subject Designs. SDC is ordered to provide an amended response that fairly responds to these two RFAs. To the extent SDC fails to do so, the matters will be deemed admitted.

**E. Interrogatory No. 5**

**Interrogatory No. 5**: Describe in detail the complete factual bases for YOUR thirteenth affirmative defense (i.e., "Independent Creation / No Copying") asserted in YOUR Answer, including IDENTIFYING any/all PERSONS and/or "Zoetop's vendor(s), . . . upstream suppliers, designers, agents, or factories" who YOU contend independently created or otherwise have rights in the SUBJECT DESIGNS, the grounds for YOUR contention for each of the SUBJECT DESIGNS, and the dates of any alleged independent creation of each of the SUBJECT DESIGNS; and IDENTIFYING the DOCUMENTS that support YOUR responses.

Zoetop and SDC initially responded that subject to a series of objections, they would produce business records in their "possession, custody, or control sufficient to ascertain the identity of these third-party vendors along with the representations and warranties that they made in connection with the products at issue." Pl. Mot. Joint Stip. at 90. In a supplemental response, SDC stated, "To the best of Responding Party's knowledge, each of the designs on the products at issue was independently created by someone other than Plaintiff, typically a designer working for a third-party vendor that has represented and warranted that anything they sell via the Responding Party's website does not infringe any third party's intellectual-property rights. The agreements in which those vendors represented and warranted this have been produced with the Bates numbers UDP-SDC_0000967 to '2750. To the extent that certain of the products at issue were created by in-house designers of Responding Party, those designers created the product at issue without knowledge of or exposure to Plaintiff's works and/or using fabric obtained from a third-party vendor." *Id.* at 90-91.

According to Plaintiff, SDC agreed on May 19, 2023 to provide a further supplemental response which would state whether each accused product was created by a vendor or in-house

designer and would then identify the designer. *Id.* at 91. As to Zoetop, Plaintiff argues that it has failed, as of May 23, 2023, to cite any documents in its response. *Id.* Plaintiff also contends that SDC cites to an improperly large Bates range, which consists of Chinese-language documents. *Id.* at 91-92.

Defendants contend that SDC served a second supplemental response to this interrogatory on May 26, 2023, with certain information. *Id.* at 93. Plaintiff responds that the supplemental response does not contain that information. Pl. Mot. Pl. Suppl. at 5.

Defendants have agreed that a second supplemental response was warranted. The parties dispute the content of the second supplemental response, and the Court does not have the text of the response before it to determine which side is telling the truth. The Court therefore ORDERS both Zoetop and SDC to serve further supplemental responses to this interrogatory. SDC's supplemental response must contain the information that Defendants purport was included in the May 26, 2023 response.[6] If the responding parties point to business records under Rule 33(d), they must provide more specificity in their Bates number ranges. They may not point to ranges of over 1000 (or even 100 pages) of documents. If the business records do not provide a complete answer to the interrogatory, the supplemental response must provide any missing information or address why the missing information is not within the responding party's possession, custody, or control.

///

///

///

[6] "Shein Distribution Corporation served a second supplemental response to Universal's Interrogatory No. 5 on May 26, 2023. This second supplemental response clarified that all of the products at issue in this case were provided by third-party vendors—i.e., none were created or provided by in-house designers of the Shein parties. The second supplemental response identified the vendors responsible for providing the products at issue on a per-SKU basis. For a handful of SKUs, Shein Distribution Corporation has not yet been able to identify the vendor that provided the product, but the Shein parties will continue to investigate and will supplement this response in accordance with their obligations under the Federal Rules." Pl. Mot. Joint Stip. at 93.

///

## III. ZOETOP'S MOTION TO COMPEL

### A. Interrogatories

#### 1. Interrogatory No. 1

**Interrogatory No. 1**: For each of YOUR DESIGN(S), please IDENTIFY ALL aspects of the design that constitute original authorship. In order to do this, for each design: (a) if there are individual elements of the design that YOU are claiming constitute original authorship, such that they are individually protectable, then YOU should identify each such element; (b) if YOU are claiming that the design is an original selection and arrangement of otherwise unprotectable elements, then you should identify each of the elements that are part the claimed selection and arrangement, and explain what is purportedly original about the claimed selection and arrangement; (c) if there are elements of the design that YOU concede are within the public domain (such as general design patterns or concepts) then you should identify each of those elements; and (d) if any aspect of the design is based on a prior work of authorship or on public domain material (such as when a designer looks to a prior source for "inspiration"), then YOU should IDENTIFY each such work or material by title, year first published, ISBN or copyright registration number, and indicate what specific page or design number was used from this work or material.

Plaintiff asserted a number of objections in response to this ROG. Subject to those objections, Plaintiff responded: "Universal contends that the Subject Designs are original, that they are registered with the U.S. Copyright Office, and that those registrations are presumptively valid, including the originality of the Subject Designs covered by those registrations." Def. Mot. Joint Stip. at 13.

The Court will not reach the merits of this discovery dispute at this time. Zoetop represented as recently as May 16, 2023 that it would not move to compel on this interrogatory. *See* Def. Mot. Tookey Decl. ¶¶ 1-3; Def. Mot. Burke Decl., Ex. 10 at 5 ("As mentioned, not planning to move on Rog 1"). The parties have not adequately met and conferred on this interrogatory because Plaintiff did not expect it to be at issue. The Court DENIES without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: CV 22-3741 FLA (RAOx) Date: June 23, 2023
Title: Universal Dyeing and Printing, Inc. v. Zoetop Business Co., Ltd. et al.

prejudice Zoetop's request to compel a further response for failure to exhaust meet and confer efforts.[7]

2. Interrogatory No. 2

**Interrogatory No. 2**: Please explain in detail, on a step-by-step basis, the investigation YOU undertook in order to respond to the Interrogatory No. 1, and specifically IDENTIFY what parts of your response to Interrogatory No. 1, if any, are based on personal knowledge of an individual affiliated with YOU. To do this, at a minimum, you should IDENTIFY (a) what persons provided information to YOU about the creation of YOUR DESIGN(S); (b) what each such person communicated to YOU about the creation of YOUR DESIGN(S) and whether any of that information was based on personal knowledge; (c) any persons who have relevant information about the creation of YOUR DESIGNS, but who YOU did not obtain information from; (d) ALL the DOCUMENTS and COMMUNICATIONS (by BATES number) that were determined to contain responsive information; (e) what responsive information YOU obtained from those DOCUMENTS and COMMUNICATIONS; and (f) any DOCUMENTS and COMMUNICATIONS that YOU know of that might contain responsive information, but which you did not locate or review. YOU should specifically indicate what, if anything, YOU did in order to obtain responsive information from the individual designer who created the design, or from the design studio that sold you the relevant artwork. Please note that this interrogatory does not ask for the details of any communications between YOU and your counsel of record in this case and it is not asking for details of YOUR lawyer's independent investigation (if any); it only seeks to uncover the factual basis for your response to the foregoing interrogatory.

Plaintiff initially objected to this ROG and did not provide any substantive response. In a supplemental response, Plaintiff pointed to approximately 70 pages of Bates-stamped documents and included a substantive response. Def. Mot. Joint Stip. at 21-22.

Zoetop contends that the supplemental response is still deficient because it lumps together all five Subject Designs, even though the documents referenced by Plaintiff suggest that the Subject Designs were created by different designers and purchased from different studios. *Id.* at

[7] To facilitate the parties' further meet and confer efforts on this interrogatory, the Court directs the parties to its analysis below on RFA Nos. 24-33.

23. Zoetop also notes that the response does not identify any individuals Plaintiff spoke to, and points to over 70 pages of documents in contravention of Rule 33(d). *Id.*

Plaintiff responds that it adequately answered the question asked and Zoetop seeks to compel an answer to a different question. *Id.* Plaintiff asserts that the 70 pages provide the names of the relevant persons and entities and provides more specific Bates number ranges for each Subject Design. *Id.* at 24. Plaintiff also contends that Zoetop seeks impermissible discovery about discovery. *Id.* at 24-25.

Zoetop's request to compel a further response to this interrogatory is DENIED without prejudice. To the extent a further response to this interrogatory relies on a further response to Interrogatory No. 1, the request is denied without prejudice for failure to exhaust meet and confer efforts on Interrogatory No. 1. The parties shall discuss this interrogatory if they meet and confer further on Interrogatory No. 1. As to Zoetop's argument that the response lumps the five Subject Designs together, Plaintiff has provided Bates number ranges for each Subject Design.

3. <u>Interrogatory No. 4</u>

**Interrogatory No. 4**: For each of YOUR DESIGN(S), please explain in detail, on a step-by-step basis, how and when it was created. To do this, for each allegedly original element of each design, you should explain how and when it was created, which includes explaining each step every person involved in the process took, and what tools (such as pen and paper, computer software, e.g., Adobe Illustrator, etc.) they used to complete each step of the process, along with providing the dates on which work began and completed for each design. To the extent that any step of the design process involved making changes to a prior work of authorship or to public domain material, explain specifically what was done to differentiate YOUR DESIGN(S) from such prior work or material, who made these changes, what tools they used, and how the prior work or material was altered to create YOUR own design.

Plaintiff initially asserted a number of objections in response to this ROG but stated that it would produce documents pursuant to Rule 33(d). Def. Mot. Joint Stip. at 27-28. In a supplemental response, Plaintiff referred Zoetop to the same Bates number range as it did in response to Interrogatory No. 2, and further stated which studio created each design. *Id.* at 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: CV 22-3741 FLA (RAOx) Date: June 23, 2023
Title: Universal Dyeing and Printing, Inc. v. Zoetop Business Co., Ltd. et al.

Zoetop argues that the supplemental response is incomplete because the ROG asks how the designs were created, but the response only identifies who created the designs and when. *Id.* at 28-29. Zoetop contends that if Plaintiff does not know how its designs were created, Plaintiff should say so. *Id.* at 29.

Plaintiff responds that Zoetop is aware that Plaintiff acquired the rights in the Subject Designs from this parties and Plaintiff has provided the information available to it. *Id.* Plaintiff contends that Zoetop cannot compel Plaintiff to change its answer or knowledge just because Zoetop does not like the answer. *Id.* at 30.

The Court GRANTS Zoetop's request to compel a further response to this interrogatory. It is unclear whether a complete response to the ROG can be derived from the business records to which Plaintiff points. In *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR (DMR), 2015 WL 4999762 (N.D. Cal. Aug. 21, 2015), the court rejected the responding party's argument that its response pursuant to Rule 33(d) was sufficient. *Id.* at *3. The court found that even if some pertinent information may be found in the business records, this is not enough because the plaintiffs were entitled to a complete response. *Id.* Here, it appears that the business records, which consist of "invoices, assignments, copyright registrations, and deposits," *see id.* at 29, would not provide a complete response as to how each Subject Design was created. While such details may not be within Plaintiff's knowledge because it acquired the Subject Designs from third parties, Zoetop is entitled to a complete response. If a complete response cannot be derived from the business records, Plaintiff must provide the missing information in its response. If the missing information is not within Plaintiff's knowledge after a reasonable inquiry, Plaintiff must provide that explanation in a further supplemental response.

4. Interrogatory No. 5

**Interrogatory No. 5**: For each of YOUR DESIGN(S), explain in detail all of the circumstances of that design's "first publication" under the Copyright Act. Specifically, You should: (a) state the date (month / day/ year) when that design was first published; (b) explain how and by what means the first publication of that design was effected (e.g., the design was first published when pictures of it were uploaded to a sales website, or the design was first displayed to the public at the 2018 MAGIC trade show in Las Vegas); (c) IDENTIFY all persons, or groups or categories of persons, to whom the first publication of that design was directed (e.g., the design was first

published when it was shown, in-person, to the following specific customers when they visited the showroom); and (d) IDENTIFY, by BATES number if applicable, any and all DOCUMENTS, COMMUNICATIONS, or other evidence, which now exists, or which ever existed, that would tend to directly prove or disprove your response to this interrogatory (e.g., a copy of the design's listing on the company's sales website, which shows the date the page for that design was uploaded to the website, is included as Bates No. XXXX).

Plaintiff initially asserted a number of objections in response to this interrogatory, but then stated that it would produce documents pursuant to Rule 33(d). Def. Mot. Joint Stip. at 32. In a supplemental response, Plaintiff referred Zoetop to certain Bates number ranges for the dates of publication, and further stated that after a reasonable and diligent search, it is unaware of any other responsive information within its possession, custody, or control. *Id.* at 32-33.

Zoetop argues that Plaintiff's supplemental response is incomplete because the documents identified by Plaintiff are copyright registrations, which only identify the date and country where Plaintiff claims the first publication took place. *Id.* at 33. They do not explain the circumstances of the first publication of each design. *Id.* Zoetop contends that Plaintiff should have this information because the copyright registrations identify Plaintiff as the author and claimant, and the country of first publication as the United States. *Id.*

Plaintiff responds that the Subject Designs were first published between 2008 and 2013, and Plaintiff no longer has details about first publication. *Id.* at 34. Plaintiff contends that mere distrust and suspicion do not justify Zoetop's challenge to Plaintiff's response. *Id.* Plaintiff also argues that Zoetop seems to be requesting that Plaintiff interpret the legal definition and effect of the term of art "publication," which is fraught. *Id.*

The Court GRANTS Zoetop's request to compel a further response to this interrogatory. Plaintiff explains in the Joint Stipulation, but not in its response to the interrogatory, that it no longer has responsive information because of the passage of time. Zoetop reasonably would have expected this information to be within Plaintiff's knowledge and the Court may order Plaintiff to provide a further explanation in a supplemental response as to why it no longer has responsive information in its possession, custody, or control. *See Shaw*, 2021 WL 3890094, at *4 ("When a dispute arises out of the completeness of a search undertaken, particularly where there is an absence of information that would have been expected to be included, the responding party must

come forward with an explanation of the search conducted with sufficient specificity to allow the Court to determine whether a reasonable search was performed."). The Court finds the cases cited by Plaintiff to be distinguishable. In *Scott v. Palmer*, No. 1:09-cv-01329-LJO-SKO (PC), 2014 WL 6685810, at *3-5 (E.D. Cal. Nov. 26, 2014), there was no suggestion that the requested information, such as the ingredients of pepper spray used at a prison, would be in the possession, custody, or control of the responding prison officers. In contrast, the requested information here appears to have been in Plaintiff's possession at some time in the past. In *ABKCO Music, Inc. v. Sagan*, 15 Civ. 4025 (ER)(HBP), 2017 WL 3263443, at *2, *5 (S.D.N.Y. July 31, 2017), the requested information was from over 50 years ago and the responding parties explained in their discovery responses why they lacked sufficient information. *Id.* at *2. Here, there is no explanation in Plaintiff's response as to why the requested information, which would likely have been in Plaintiff's possession at some time within the past 10-15 years, is no longer available. While the Court is not, at this time, questioning Plaintiff's credibility, Plaintiff should provide an explanation in the form of a supplemental response as to why it no longer has possession, custody, or control of responsive information.

5. Interrogatory No. 16

**Interrogatory No. 16**: For the period starting six months prior to the date when the oldest of YOUR DESIGN(S) at issue in this case was allegedly created and ending on the date the original complaint was filed in this action, IDENTIFY ALL PERSONS who did any design work for YOU, whether as an employee, independent contractor, or otherwise and give their job titles (or, if they did not have a formal job title, a description of their activities) and dates of employment or engagement by YOU. Design work includes creating or modifying designs and also supervising the creation or modification of designs. If YOU IDENTIFY any entity (i.e., not an individual designer) in response to this interrogatory, you should IDENTIFY ALL individuals working for that entity who created, modified, or supervised the creation or modification of designs or artwork for YOU during the relevant time period.

Plaintiff has asserted a number of objections to this interrogatory and has not provided a substantive response. *See* Def. Mot. Joint Stip. at 38-39.

Zoetop contends that the individuals or entities that did design work for Plaintiff over the period relevant to this lawsuit is relevant because it could provide detail about how Plaintiff

acquires designs from third parties, its processes and procedures for registering copyrights, and the extent to which its designers consulted or borrowed from preexisting works. *Id.* at 39. Plaintiff responds that this interrogatory seeks information that is not relevant because each of the Subject Designs was purchased from third-party design studios. *Id.* According to Plaintiff, Zoetop has information regarding Plaintiff's acquisition of the rights to the Subject Designs, the creation of those Designs, and Plaintiff's registration of those Designs. *Id.* at 40.

Zoetop's request to compel a further response to this interrogatory is DENIED. There is no dispute that Plaintiff acquired the Subject Designs from third party studios. Zoetop has not shown how the requested information regarding any designers who worked for Plaintiff, who undisputedly did not create the Subject Designs, would be relevant to this lawsuit. Zoetop has been provided with information regarding acquisition, creation, and registration of the Subject Designs, to the extent Plaintiff has possession, custody, or control of such information, and Zoetop has not shown how information regarding any other designs is relevant.

6. Interrogatory No. 19

**Interrogatory No. 19**: For each of YOUR PRODUCT(S), as broken down by product number or SKU, explain in detail each manner of marketing or advertising you engaged in for that product and how much money you spent on that manner of marketing or advertising for the product. If you have displayed YOUR PRODUCT(S) or YOUR DESIGN(S) in any kind of show room or at conventions or similar gathering, you should IDENTIFY each such place or event and the timeframe when the design or product was displayed there.

Plaintiff has asserted a number of objections to this interrogatory and has not provided a substantive response. *See* Def. Mot. Joint Stip. at 41-42.

The Court DENIES Zoetop's request to compel a further response. Zoetop argues that the information it seeks is relevant to access, which Plaintiff will need to prove. Def. Mot. Joint Stip. at 42. While a subset of responsive information may be relevant to the issue of Defendants' access to the Subject Designs, the interrogatory is overbroad as it is not limited to assessing instances of Defendants' access. Plaintiff has indicated that it has provided a complete response to a separate interrogatory with all of the evidence it contends goes to Defendants' access to the Subject Designs. *Id.* at 42-43. To the extent this interrogatory seeks additional information beyond that

interrogatory, it is overbroad and not proportional to the needs of this case. And, as Plaintiff asserts, Zoetop has made no showing as to how the amount of money Plaintiff spent on marketing and advertising is relevant.

7. Interrogatory No. 20

**Interrogatory No. 20**: For SUBJECT DESIGN C, explain in detail what—if any—original authorship differentiates Registration No. VA 2-129-207 from VA 1-864-071.

Plaintiff has asserted a number of objections to this interrogatory and has not provided a substantive response. *See* Def. Mot. Joint Stip. at 43-44.

The Court GRANTS Zoetop's request to compel a further response. The Court rejects Plaintiff's argument that Zoetop is attempting to flip the framework of validity of a copyright registration. Because it will be Zoetop's burden to rebut the facts set forth in the copyright certificate, Zoetop is entitled to relevant discovery for that purpose. Even if supplemental registrations may be proper under certain circumstances, Zoetop may seek information as to whether the supplemental registration for this Subject Design was proper. Finally, to the extent Plaintiff contends that responding will require an explanation of what legally constitutes "original authorship," the Court is not persuaded. An interrogatory is not objectionable merely because it asks for the application of law to fact. Plaintiff's authority in support of Interrogatory No. 1 is not persuasive as those cases involved discovery requests seeking identification of protected portions or each original element.[8] *See* Def. Mot. Joint Stip. at 15-16. This interrogatory does not ask how the Subject Designs are original or what aspects of the Subject Designs are original. Rather, it asks Plaintiff if there is a difference in original authorship between two copyright registrations for one of the Subject Designs, and, if there is a difference, it asks Plaintiff to provide an explanation. The Court finds that this interrogatory seeks relevant information.

///

///

[8] Moreover, as set forth in the analysis regarding RFA Nos. 24-33, requests seeking identification of protectable elements are likely not improper.

**B. Requests for Production**

**RFP No. 43**: A complete copy of ALL transcripts (including exhibits) of testimony taken in a prior copyright infringement case that YOU were a party to. This request encompasses both deposition and trial testimony, regardless of who took the testimony or whose witness it was, and you should include copies of ALL exhibits identified, marked, or moved into evidence during the testimony.

**RFP No. 44**: ALL DOCUMENTS RELATE TO the analysis of YOUR DESIGN(S), including expert reports, expert declarations, or other expert analyses (including exhibits) including those filed or served by either side in a prior copyright infringement case that YOU were a party to.

**RFP No. 45**: If any of YOUR DESIGN(S) was ever at issue in a prior copyright infringement case, please produce DOCUMENTS sufficient to identify each such case.

**RFP No. 46**: If any of YOUR DESIGN(S) was ever at issue in a prior copyright infringement case, please produce a copy of ALL pre-trial disclosures (such as Rule 26 initial disclosures, witness lists, exhibit lists, final pretrial conference memoranda, trial briefs, etc.), interrogatory responses, and responses to requests for admission that YOU served on YOUR counterparty in each such case.

Plaintiff asserted a number of objections to each of these RFPs and has not provided documents.

The Court DENIES Zoetop's request to compel further responses and production to these RFPs. Zoetop has not provided any authority to support its position that it is entitled to documents from prior litigation, even if prior litigation involved the same Subject Designs. As Plaintiff argues, such "piggyback" discovery requests are disfavored. *See Racing Optics v. Aevoe Corp.*, No. 2:15-cv-1774-RCJ-VCF, 2016 WL 4059358, at *1-2 (D. Nev. July 28, 2016) (finding "'piggyback' discovery requests are prohibited" and granting protective order against document requests for every document produced or generated in a prior patent litigation), *mot. for reconsideration of magistrate judge order denied*, 2016 WL 4994961 (D. Nev. Sept. 16, 2016) (rejecting argument that certain documents falling within the scope of the requests were relevant because the subpoena sought broad categories of documents). Zoetop has not shown how the

requested documents are relevant to the claims and defenses in this case. Although Zoetop argues that these RFPs seek information relevant to its affirmative defenses, Zoetop has not pointed to any specific affirmative defense to which the requested discovery would pertain. Moreover, the requests are overbroad because much of the requested discovery is likely to be specific to the claims and defenses in the other cases and irrelevant to this case. Finally, as to Zoetop's argument about credibility, district courts carefully scrutinize efforts to challenge a party's credibility based on past litigation. *See LA Printex Indus., Inc. v. Buckle, Inc.*, No. CV 09-02468 DMG (FFMx), 2010 WL 11596749, at *3 (C.D. Cal. May 21, 2010) ("The use of past litigation to cast doubt upon a litigant's present credibility warrants careful scrutiny."). Even assuming without deciding that the fact that a party is a serial litigant may be relevant to its credibility, Zoetop is already aware that Plaintiff has been a party to over 100 lawsuits. It is unclear why Zoetop needs transcripts, expert reports and declarations, and discovery responses from these prior cases to show that Plaintiff is a serial litigant. Zoetop's request is not proportional to the needs of the case.

**C. Requests for Admission**

1. RFA No. 7

**RFA No. 7**: Admit that YOU did not suffer a loss of profits on sales of YOUR PRODUCT(S) as a result of the alleged infringement in this case. (This request is only about your own lost profits; not disgorgement of profits by RESPONDING PARTY and not statutory damages).

**Response to RFA No. 7**: Universal objects to this RFA to the extent it is not relevant to the claims or defenses asserted in this case. Universal objects to this RFA on the ground that the term "disgorgement of profits by RESPONDING PARTY" is confusing and unintelligible. Universal objects to this RFA on the ground that it calls for a legal conclusion as to "infringement." Universal objects to this RFA as premature on the ground that, as of the date of this response, Defendants have not yet been deposed or produced any documents. Subject to the above general and specific objections, and to the extent Universal understands this RFA, Universal responds as follows: Universal admits that it suffered lost licensing fees, lost profit margin, and/or a reduction of the fair market value of the Subject Designs because of Defendants' exploitation of the Accused Products.

The Court GRANTS Zoetop's request to compel a further response to this RFA. The Court finds Plaintiff's response to be ambiguous. An admission to the RFA is an admission that Plaintiff did not suffer a loss of profits. Plaintiff "admits" to the RFA, but then continues to state that it did suffer lost licensing fees, lost profit margin, and/or a reduction of the fair market value. It is unclear from this response whether Plaintiff admits that it did not suffer a loss of profits but is qualifying that it suffered these other losses, or whether Plaintiff denies that it did not suffer a loss of profits and is construing the term "loss of profits" as including lost licensing fees, lost profit margin, and/or a reduction of the fair market value. Plaintiff states that because the RFA goes to actual damages, it responded fairly to the RFA. Def. Mot. Joint Stip. at 56. However, the RFA does not ask Plaintiff whether it suffered actual damages. It asks whether Plaintiff suffered a loss of profits. Actual damages can be measured by lost profits or the value of the use of the copyrighted work to the infringer. *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004); *see also Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) ("Although 'actual damages' can be awarded in the form of lost profits, hypothetical-license damages also constitute an acceptable form of 'actual damages' recoverable under Section 504(b)."). Thus, actual damages do not always equal loss of profits. Plaintiff may not rewrite the RFA as seeking information about actual damages when it expressly asks about loss of profits. If Plaintiff believes it needs to qualify an admission, it may do so, but it must be clear that it is a qualification and not a response to a rewritten version of the RFA.

2. <u>RFA No. 13</u>

**RFA No. 13**: Admit that when YOU acquire a piece of fabric containing a print design, there is no definitive way to check to make sure that the design YOU have acquired is not substantially similar to some other pre-existing design created by somebody else.

**Response to RFP No. 13**: Universal objects to this RFA on the ground that the terms "acquire a piece of fabric containing a print design," "no definitive way," "check to make sure," "some other pre-existing design created by somebody else" are vague, ambiguous, and/or undefined. Universal objects to this RFA on the ground that it calls for a legal conclusion as to "not substantially similar." Universal objects to this RFA to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine. Universal objects to this RFA to the extent it is an incomplete hypothetical and/or purports to require Universal to speculate. Universal objects to this RFA to the extent it is not relevant to the claims or defenses asserted in this case. Universal objects

to this RFA as confusing and unintelligible on the ground that it appears to conflate "acquir[ing] a piece of fabric containing a print design" with "acquir[ing] a . . . design." Universal objects to this RFA as compound and consisting of at least two subparts.

Zoetop argues that this RFA asks Plaintiff to admit the limits of its possible knowledge in ensuring that print designs that it acquires are not substantially similar to preexisting designs. Def. Mot. Joint Stip. at 58. Zoetop contends that the RFA is relevant to originality and value of Plaintiff's designs, and to several of Zoetop's affirmative defenses. *Id.* at 59.

The Court DENIES Zoetop's request to compel a further response to this RFA. The RFA appears to be an incomplete hypothetical, *i.e.*, one that is "not tied to the facts at issue in the case." *Advantus, Corp. v. Sandpiper of Cal., Inc.*, No.: 19cv1892-CAB (NLS), 2021 Wl 2038318, at *2 (S.D. Cal. May 21, 2021) (observing that courts have not compelled parties to respond to incomplete hypotheticals). The RFA is not limited to the Subject Designs at issue in this case or the time period when Plaintiff acquired the Subject Designs. A crucial question in determining whether an RFA is proper is: "does a given RFA address a disputed fact in the case and would an affirmative response reduce the burden on a jury at trial?" *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-cv-1846 LHK (PSG), 2012 WL 952254, at *4 (N.D. Cal. Mar. 20, 2012). It is unclear how knowing whether Plaintiff generally has a definitive way to check whether a design it acquires is substantially similar to some other pre-existing design would reduce the burden to determine whether the Subject Designs are original or have value. Moreover, as noted by Plaintiff, the test for originality is not substantial similarity. Substantial similarity is a test to determine whether an alleged infringer unlawfully appropriated the plaintiff's work. *See Skidmore*, 952 F.3d at 1064 (9th Cir. 2020). Originality, on the other hand, "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Thus, it is unclear how a check for substantial similarity would be relevant to originality. Finally, Zoetop fails to identify the affirmative defenses that might be supported by the information requested by this RFA. The Court sustains Plaintiff's objections to this RFA.

///

///

3. RFA Nos. 24-33[9]

**RFA No. 24**: Admit that no current or former employee, officer, owner, or director of RESPONDING PARTY has personal knowledge about which specific elements of SUBJECT DESIGN A constitute original authorship.

**Response to RFA No. 25**: Universal objects to this RFA on the ground that the term "which specific elements of SUBJECT DESIGN A" is vague, ambiguous, and/or undefined. Universal objects to this RFA as unlimited in temporal scope, and as overbroad, unduly burdensome, and disproportionate to the needs of the case on the ground that it purports to require Universal to respond on behalf of any and all "current or former employee[s], officer[s], owner[s], or director[s]." Universal objects to this RFA to the extent it prematurely seeks expert testimony. Universal objects to this RFA on the ground that it calls for a legal conclusion as to what "constitute[s] original authorship," and that, as phrased, it thus calls for Universal to divulge protected attorney-client communications, attorney work-product, and/or its counsel's mental impressions and conclusions as to what legally constitutes "original authorship."

**RFA No. 25**: Admit that based on ALL of the information available to RESPONDING PARTY, RESPONDING PARTY does not know which specific elements of SUBJECT DESIGN A (i.e., not the design as a whole, but, rather, any particular elements of the design that are claimed as independently protectable) constitute original authorship.

**Response to RFA No. 25**: Universal objects to this RFA as duplicative of RFA 24, and incorporates by reference its objections to RFA 24. Universal objects to this RFA on the ground that the terms "ALL of the information available," "which specific elements of SUBJECT DESIGN A," and "not the design as a whole, but, rather, any particular elements of the design" are vague, ambiguous, and/or undefined. Universal objects to this RFA as unlimited in temporal scope, and as overbroad, unduly burdensome, and disproportionate to the needs of the case. Universal objects to this RFA on the ground that it calls for legal conclusions as to what is or is not "independently protectable" and what does or does not "constitute original authorship," and that, as phrased, it thus calls for Universal to divulge protected attorney-client communications,

[9] RFA Nos. 24 and 25 are provided in the Joint Stipulation, but Zoetop explains that the same requests are repeated for the other four Subject Designs.

attorney work-product, and/or its counsel's mental impressions and conclusions as to what legally is "independently protectable" and what legally constitutes "original authorship."

Zoetop argues that because the Subject Designs were created at third-party design studios, it should be easy for Plaintiff to admit that it has no personal knowledge about what is original about the designs. Def. Mot. Joint Stip. at 63. Zoetop asserts that, in the Ninth Circuit, a copyright plaintiff must identify specific, objective, protectable elements to satisfy the extrinsic test for substantial similarity. Def. Mot. Def. Suppl. at 2.

Plaintiff responds that the RFAs seek only legal conclusions. *Id.* at 64. Additionally, Plaintiff contends that determining whether something is an original work of authorship is not only a contested issue, but also an evidentiary issue, not a discovery issue. *Id.* at 66. Plaintiff further argues that the RFAs essentially demand Plaintiff ratify legal conclusions that Zoetop has unilaterally attached to the facts. Def. Mot. Pl. Suppl. at 4.

The Court DENIES Zoetop's request to compel further responses to these RFAs.

Although the Court will deny Zoetop's motion as to these RFAs, the Court rejects Plaintiff's argument that Zoetop may not inquire about identification of protectable elements or material of the Subject Designs. Discovery requesting a plaintiff to identify protectable elements of its work is proper.[10] *See, e.g.*, *Safeair, Inc. v. Airtran Airways, Inc.*, No. 09-5053RJB, 2009 WL 1835916, at *2 (W.D. Wash. June 26, 2009) (finding interrogatories asking "to identify what element of an illustration is copyrighted" were proper); *see also Skidmore*, 952 F.3d at 1064 ("[I]t is essential to distinguish between the protected and unprotected material in a plaintiff's work."); *Reflex Media, Inc. v. Luxy Ltd.*, No. CV 20-423-RGK (KSx), 2021 WL 5937650, at *7 (C.D. Cal. Oct. 20, 2021) ("Defendant is entitled to discover what particular elements Plaintiffs *contend* are

---

[10] Some courts in this district have required this identification at the pleading stage. *See, e.g.*, *Kev & Cooper, LLC v. Furnish My Place, LLC*, No. 8:20-cv-01509-MCS-KES, 2021 WL 6618745, at *3 (C.D. Cal. Nov. 28, 2021) (granting motion to dismiss with leave to amend for failure to "articulate any protectable elements of Plaintiff's designs that are comparable to corresponding elements of Defendant's designs"); *Woodland v. Hill*, No. 2:22-cv-03930-AB-MRWx, 2022 WL 19250191, at *4 (C.D. Cal. Dec. 8, 2022) (finding complaint failed to plausibly allege unlawful appropriation because it did not "identify concrete elements based on objective criteria"). The Court fails to see how discovery regarding facts that a plaintiff should plead would be improper.

'original' or 'expressive' in its intellectual property at issue in this case."). The Court is not persuaded by Plaintiff's citation to out of circuit cases suggesting or stating otherwise, nor is it persuaded by Plaintiff's citation to *Grupo Bimbo S.A.B de C.V. v. Snak-King Corp.*, No. CV 13-02147-ABC (VBKx), 2014 WL 12614429 (C.D. Cal. May 5, 2014), which did not involve claims for copyright infringement.

However, the Court denies Zoetop's motion here because these RFAs do not request Plaintiff to admit a fact regarding the identification of protectable elements. Rather, they ask whether Plaintiff knows "which specific elements . . . constitute original authorship." The Court finds that this phrasing is confusing and ambiguous. To the extent Zoetop wishes to ask about protectable elements, Zoetop must rephrase these RFAs or request this information through some other form of discovery.

## IV. PLAINTIFF'S REQUEST FOR SANCTIONS; SUBSEQUENT DISCOVERY DISPUTES

Here, Plaintiff's motion to compel is granted in part and denied in part. The Court has the discretion to apportion reasonable expenses if a motion to compel is granted in part and denied in part. Fed. R. Civ. P. 37(a)(5). The Court finds that while some of Defendants' failures to provide complete responses may not have been justifiable, other disputes were closer calls and Defendants' positions were justifiable. Moreover, much of the expense incurred by Plaintiff in drafting a 100-page joint stipulation could have been avoided had the parties utilized the Court's informal discovery procedures. As explained on the Court's procedures page on this District's webpage, whether a party attempted a good faith resolution of a discovery dispute, including the use of the Court's informal resolution procedures, is one factor the Court may consider in a request for discovery-related sanctions. It appears that the parties gave up on the informal procedure because they could not draft a short joint email to initiate the process, and instead decided to draft joint stipulations of 100 and 68 pages in length. The Court does not consider this a good faith attempt to resolve the dispute without formal motion practice. Under these circumstances, the Court finds that an award of expenses is not warranted and DENIES Plaintiff's request for monetary sanctions.

**The Court will require that any subsequent discovery disputes in this case for the undersigned's consideration be raised via the Court's informal discovery dispute resolution procedures.** Discovery disputes are often narrowed and streamlined during an initial telephonic

hearing, and, when necessary, the Court generally orders letter briefing with strict page limits. While the Court fully expects the parties to comply with the Court's procedures, to the extent they cannot agree on a "very brief joint description of the current discovery issue(s)," each side may provide its respective description in a joint email.

## V. CONCLUSION

For the reasons set forth above, both motions to compel are granted in part and denied in part. All supplemental responses and production are due **within two weeks of the date of entry of this order**. If a responding party believes that it will be unable to complete production within two weeks, the responding party shall inform the opposing party as soon as practicable and the parties shall meet and confer on a reasonable extension to complete the production. However, the responding party may not point to an extensive search for one request as an excuse to delay production on a less burdensome request.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer dl